UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS E. AMPY,

                  Plaintiff,                   Case No. 2:14-cv-13547
                                                 Judge Denise Page Hood
v.                                          Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.
_____/

## RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 18) AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 23)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 18), **GRANT** Defendant's motion for summary judgment (DE 23),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Marcus E. Ampy, brings this action under 42 U.S.C. §§ 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for supplemental security income (SSI)

benefits and disability insurance (DI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for summary judgment (DE 18), the Commissioner's cross motion for summary judgment (DE 23) and the administrative record (DE 13).

### A.    Background[1]

Plaintiff filed his applications for SSI and DI benefits on February 9, 2011, alleging that he has been disabled since September 11, 2010, at age 28.  (R. at 207-212, 213-218; *see also*, R. at 219-220.)  Plaintiff alleges disability as a result of spinal arthritis, severe depression, social anxiety, bipolar disorder, obstructive severe sleep apnea, underactive thyroid and brittle bones.  (R. at 236-244.)  Plaintiff's applications were denied on May 18, 2011.  (R. at 128-139, 140-151, 152, 153, 154-157, 158-161.)

Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  R. at 164-165.  ALJ Kevin W. Fallis held a hearing on April 19, 2012, at which Plaintiff was represented by counsel and Vocational Expert (VE) Stephanee Leech testified.  (R. at 68-111.)  On July 18, 2012, ALJ Fallis determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 31-55.)

---

[1] A prior hearing was held on October 26, 2009, and a prior decision from ALJ Elliott Bunce issued on September 10, 2010.  (R. at 56-67, 112-127.)

Plaintiff requested review of the hearing decision.  (R. at 21, 27-30.)  On April 9, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 15-20.)  Thus, ALJ Fallis's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on September 11, 2014. (DE 1.)[2]

### B.    Plaintiff's Medical History

Plaintiff alleges that he has been disabled since September 11, 2010.  (*See* R. at 207, 215, 219.)  Plaintiff's medical records span the period from March 31, 2010 to April 6, 2012.  (R. at 284-597 [Exhibits 1F-18F].)  In addition, the Appeals Council had the benefit of a December 17, 2013 note from Bruce Walters, M.D. (R. at 22.)

Although Plaintiff's medical records include both physical and mental records, the focus in the instant case is on the latter category.  These records are discussed as necessary below.

### C.    Hearing Testimony

#### 1.    Plaintiff's Testimony

Plaintiff Marcus Erving Ampy, Sr. testified at length at the April 19, 2012 hearing.  (R. at 73-102.)  Of particular importance to the case at bar is his testimony regarding the use of alcohol and marijuana.  Specifically, Plaintiff

---

[2] On November 20, 2014, the SSA gave Plaintiff until September 11, 2014 to file a civil action.  (R. at 1-2; *see also*, R. at 3-14.)

testified that he completed substance abuse treatment in 2007.  (R. at 101.)  At the hearing, Plaintiff estimated that he last consumed alcohol a little more than one year earlier.  Plaintiff also testified that he used marijuana approximately three weeks earlier but "up until then it's been about a year since I used that also."  (R. at 95.)  At that time, he used marijuana approximately a few times per week.  (R. at 95-96.)  He stopped using marijuana, because he wanted "to see if that was . . . adding to [his] depression . . . ."  (R. at 96.)

## 2.    Vocational Expert Testimony

VE Leech also testified.  (R. at 102-107, 108-110.)  Upon examination by the ALJ, the VE testified as to six (6) hypotheticals:  Hypotheticals Nos. 1 and 2 concerned limited medium work, without and with "frequent bilateral handing of objects and fingering[;]" Hypotheticals Nos. 3 and 4 concerned limited light work, without and with "frequent bilateral handling of objects and fingering[;]" and Hypotheticals Nos. 5 and 6 concerned being off-task 20 percent of the day and being absent from work for two workdays per month.  (*See* R. at 104-109.)  In addition, the VE testified in response to a hypothetical posed by Plaintiff's counsel, which would have the Plaintiff only *occasionally* "handling, fingering or feeling" objects.  (R. at 110.)

**D.    The Administrative Decision**[3]

ALJ Fallis rendered his decision on July 18, 2012.  R. at 31-55.  At Step 1,

he found that Plaintiff has not engaged in substantial gainful activity since

September 11, 2010, the alleged onset date.  R. at 36.

At Step 2, the ALJ found that Plaintiff has the following severe impairments:

depression; anxiety; polysubstance dependence in remission; chronic pain in neck,

back, abdomen, chest; obesity; obstructive sleep apnea and thyroid problems.  (R.

at 37-42.)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (R. at 42-44.)

At Step 4, the ALJ found that, based on all of the impairments, including the Substance Use Disorders (SUDs),[4] Plaintiff has the residual functional capacity (RFC) to perform medium work, with multiple limitations.  (R. at 44-45.) Moreover, the ALJ found that Plaintiff is unable to perform past relevant work. (R. at 45.)

At Step 5, having considered Plaintiff's age, education, work experience, and RFC (based on all of the impairments, including the SUDs), the ALJ found that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 45-46.)  However, the ALJ further found that Plaintiff's SUD is a contributing factor material to the determination of disability, because Plaintiff would not be disabled if he stopped the substance use, and concluded that Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.  (R. at 46-50.)

### E.    Standard of Review

---

[4] The headings of the ALJ's Step 4 and Step 5 determinations refer to SUDs in the plural.  (R. at 44-45.)  However, the Court assumes the ALJ was referring to his Step 2 finding that Plaintiff's severe impairments included "polysubstance dependence in remission."  (R. at 37.)

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

In his motion for summary judgment, Plaintiff contends that the ALJ's decision that substance abuse was material to Plaintiff's disability, thereby precluding receipt of DI benefits and SSI benefits, is not supported by substantial evidence.  (DE 18 at 2, 7-16.)  Significantly, this is the only issue that he identifies as a basis for his appeal. (*Id.* at 2.)

The Commissioner opposes Plaintiff's motion. Presumably confused by Plaintiff's attempt to brief *two other issues* which were not identified in his Statement of Issues – which the Court likewise finds baffling and irritating – the Commissioner addresses all three arguments which found their way into the body

of Plaintiff's brief, and contends that substantial evidence supports (a) the ALJ's finding that substance use was a contributing factor material to Plaintiff's disability determination; (b) the ALJ's assessment of Plaintiff's credibility; and (c) the ALJ's evaluation of Dr. Ballard's opinions.  (DE 23 at 3, 7-29.)

Plaintiff has filed a reply.  (DE 24.)  I will address each argument raised in turn, but before I do, a word must be said about the quality and lack of compliance displayed in Plaintiff's briefing.

### 1.      The sub-par quality of Plaintiff's briefing

Local Rule 7.1(d)(2) is simple and clear. It states that, "A brief supporting a motion or response must, *at the beginning*, containing a concise statement of the issues presented…."  E.D. Mich. LR 7.1(d)(2) (emphasis added).  Upon review of the Statement of Issues, right "at the beginning" of the brief, the Court has every right to assume that it is being asked to decide the issues which are actually identified, and *only* the issues which are actually identified.  Plaintiff's Statement of Issues, *in toto*, identifies a unitary issue to be decided by the Court in this appeal from the ALJ's decision, namely, "Whether the decision of the Administrative Law Judge ('ALJ') that substance abuse was material to Plaintiff's disability[,] precluding receipt of Disability Insurance Benefits ('DIB') and Supplemental Security Income ('SSI') insurance[,] is supported by substantial evidence?"  (DE 18 at 2.)  His argument takes up 10 pages in the body of his brief, without a single

topic heading by which any separate issues or arguments – other than the solitary one identified at the very beginning of his brief – might be identified to the Court as the subjects of adjudication.  (DE 18 at 7-16.)[5]  And yet, after discussing this single, previously identified issue on pages 7-12, he abruptly launches into another separate basis upon which he seeks reversal (previously unidentified, not otherwise distinguished in the body of the brief and without benefit or courtesy of a topic heading) from pages 12-14, and then yet a third unidentified issue at pages 14-16. Fortunately, the Commissioner came to the rescue and pointed out that Plaintiff was actually arguing *three separate issues*, which were buried in his brief, not the mere *one* he had actually identified.  The Commissioner then further extended his aid by using topic headings (though hardly innovative) to distinguish these issues for the Court's enlightenment, in addition to complying with Local Rule 7.1, listing each *of Plaintiff's* three separate issues.

The Court should not have to dig through ten pages of briefing in an exercise of "issue spotting" akin to a first year law school exam.    In the future, Plaintiff's counsel is directed to:  comply with Local Rule 7.1 by identifying all issues on which an appeal is based at the beginning of the brief; use distinct topic headings to demark each issue in the body of the brief; and, make sure the Statement of Issues and the topic headings in the Argument conform to each other.  Although it

---

[5] His lone topic heading in the argument section of his brief is simply called, "Argument."

has chosen to address the previously unidentified issues which found their way into the body of Plaintiff's brief here, going forward, the Court will not consider issues which are not identified "at the beginning" in compliance with the local rules.

**2.      None of the issues discovered in Plaintiff's brief merit reversal**

**a.      Substantial evidence supports the ALJ's conclusion that Plaintiff's substance use disorder (SUD) is a contributing factor material to the determination of disability.**

Plaintiff's substance use played a significant part in the ALJ's disability decision, with the ALJ referencing Plaintiff's use of drugs and alcohol, whether by Plaintiff's own testimony or as documented in his medical records, at Steps 2, 4 and 5. For example, the ALJ cited:

- The November 9, 2010 notes of therapist McNeal (to whom Plaintiff reported he started using marijuana when he was 13), and who diagnosed Plaintiff with alcohol abuse and cannabis abuse (R. at 395, 398)

- December 8, 2010 progress notes from Hamilton Community Health Network (HCHN), which indicate that Plaintiff smoked ½ pack of cigarettes per day and had used marijuana (R. at 327-328)

- A March 15, 2011 psychosocial assessment by Teresa Hallwood, RN, and/or LaJuan Gibson, LMSW of New Passages, which indicates last use of cannabis/marijuana/hashish as <u>5 months earlier</u>[6] and last use of alcohol as <u>1 year earlier</u>, and also diagnoses cannabis dependence and alcohol dependence (R. at 418, 424, 428)

---

[6] The ALJ lists last use as 1 year for both alcohol and marijuana.  (R. at 39.)

- April 1, 2011 notes from Hurley Medical Center, which indicate that Plaintiff consumes alcohol socially and has a history of cannabis abuse (R. at 408)

- An April 13, 2011 psychiatric evaluation, which indicates last use of cannabis/marijuana/hashish as <u>5 or 6 [illegible] months earlier</u> and last use of alcohol as <u>1 year earlier</u>; Plaintiff was diagnosed with polysubstance dependence, but Dr. Khan noted it was in remission (R. at 433-434)

- A February 22, 2012 SUD Biopsychosocial assessment, which indicates a last dose of cannabis/marijuana/hashish as <u>5 months earlier</u> and last dose of alcohol as <u>1 year earlier</u> (R. at 548)

- A March 27, 2012 psychiatric evaluation, during which Plaintiff reported having tested positive for cannabis in the ER (R. at 565); although not expressly noted by the ALJ, Dr. Khan's evaluation indicated a last use of cannabis/marijuana/hashish as <u>5 months earlier</u> and a last use of alcohol as <u>1 year earlier</u> (R. at 566), as well as a diagnosis of polysubstance dependence, in remission (R. at 567)

(R. at 37-40, 42, 44, 48.)  <u>There seems to be a pattern here</u>.  Notably, based on Plaintiff's self-reporting to his health professionals, he seems to be 5 months post drug use and 1 year post alcohol, *regardless of when he is asked the question*.

The ALJ then made findings regarding periods of non-sobriety.  At Step 4, specifically citing, among other things, the December 8, 2010 and March 27, 2012 notes, the ALJ stated:  "The medical evidence of record shows that during periods of non-sobriety, his symptoms significantly interfere with his ability to perform any sustained work."  (R. at 44-45.)  This is hardly a surprise.  Moreover, the ALJ concluded that Plaintiff is unable to perform his past relevant work.  Then, at Step

5, considering Plaintiff's age, education, work experience, and RFC based on all of the impairments, *including the SUDs*, the ALJ *initially concluded* that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 45-46.)

Thereafter, ALJ Fallis made several conclusions as to what would happen if Plaintiff stopped the substance use, ultimately concluding that Plaintiff's SUD was a contributing factor material to the determination of disability.  (R. at 46-50.)  In the instant motion, Plaintiff takes issue with the ALJ's conclusion that Plaintiff's substance abuse is a contributing factor material to the determination of disability. (DE 18 at 2, 7-12.)

"[A]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 1382c(a)(3)(J).  The SSA's regulations offer guidance on how to determine whether drug addiction or alcoholism (DAA) is a contributing factor material to the disability determination.  Generally, "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a).  When there is

13

medical evidence of drug addiction or alcoholism, the following process is

followed:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is *whether we would still find you disabled if you stopped using drugs or alcohol.*
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism *is a contributing factor* material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism *is not a contributing factor* material to the determination of disability.

20 C.F.R. §§ 404.1535(b), 416.935(b).

Here, the ALJ determined that, if Plaintiff stopped the substance use, he

would have an RFC to perform medium work with several limitations.  (R. at 47-

49.)  Significantly, compared to the initial Step 4 RFC finding, this "second round"

RFC finding lacks the limitations that "[t]he individual is allowed to be off task

20% of the day, in addition to regularly scheduled breaks[,]" and "[d]ue to the

individual's doctor visits, symptoms and side effects of medications, he would be

absent from work for 2 work days per month."  (*Compare* R. at 44, 47.)  With

14

these limitations removed, the ALJ concluded that, if Plaintiff stopped the

substance abuse, he would be able to perform past relevant work as a packer.  (R.

at 49-50.)

The Court should conclude that substantial evidence supports the ALJ's

finding that Plaintiff's SUD "is a contributing factor material to the determination

of disability because the claimant would not be disabled if he stopped the

substance use."  (R. at 50.)  Among other things:

- the March 31, 2010 psychosocial assessment notes that Plaintiff first used marijuana at 12 years of age and first used alcohol at 13 years of age; he smoked marijuana and drank alcohol 2 times per week and used them 8 of the last 30 days (R. at 299)

- between April 2, 2010 and April 14, 2011, Plaintiff was diagnosed with cannabis dependence, alcohol abuse/dependence and/or polysubstance dependence (R. at 288, 398, 424, 434, 446, 579)

- 5 HCHN progress notes dated August 20, 2010 through February 23, 2011 indicate marijuana use (R. at 325, 327, 329, 331, 333)

- Dr. Sabbagh's April 12, 2011 letter notes that Plaintiff "smokes weed regularly."  (R. at 441)

- a February 22, 2012 SUD Biopsychosocial Assessment strongly indicated dependence (R. at 547)

- at the March 27, 2012 psychiatric evaluation, Dr. Khan noted that Plaintiff's wife took him to the hospital for depression and seclusive behavior (R. at 562) and Plaintiff's wife reported that he had tested positive for cannabis in the ER (R. at 565); Plaintiff was diagnosed with major depressive disorder and

polysubstance dependence (in remission), among other diagnoses (R. at 567)

- on April 19, 2012, Plaintiff testified that he had used marijuana approximately three weeks earlier and further testified that, until then, it had been about a year since he had used marijuana, at which time he was using marijuana probably a few times per week (R. at 95-96)

(DE 23 at 9-10; *see also Armstrong v. Commissioner of Social Security*, No. 1:07-CV-1212, 2009 WL 723988, *5 (W.D. Mich. Feb. 24, 2009) (report and recommendation of Scoville, M.J.) (concluding there was "more than substantial evidence" supporting the ALJ's finding that plaintiff's drug and alcohol abuse was material where the administrative record documented "plaintiff's longstanding problems of drug and alcohol abuse.").)

As the Court noted in *Blaylock v. Comm'r of Soc. Sec.*, 947 F.Supp.2d 826, 839 (N.D. Ohio 2013), the Social Security Act:

. . . prohibits an individual from receiving disability benefits if drug or alcohol abuse is a contributing factor material to the individual's disability. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). When the ALJ determines that an individual is disabled and the record demonstrates a history or drug or alcohol abuse, the ALJ must determine whether the individual's substance abuse is a contributing factor to the determination of disability and whether the individual would still be disabled if the substance abuse stopped. 20 C.F.R. §§ 404.1535(a), 416.935(a); *see also* SSR 13–2P, 2013 WL 621536; SSR 82–60. If the ALJ determines that a claimant would still be disabled if the substance abuse stopped, the ALJ must conclude that the substance abuse was not a contributing factor material to the determination of disability and should award benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). But if the ALJ determines that a claimant would not be disabled if the substance abuse stopped, the ALJ must conclude

> that the substance abuse was a contributing factor material to the
> determination of disability and should not award benefits. 20 C.F.R.
> §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

As the Commissioner's own directives state: "When we apply the steps of the

sequential evaluation a second time to determine whether the claimant would be

disabled if he or she were not using drugs or alcohol, it is our longstanding policy

that the claimant continues to have the burden of proving disability throughout the

DAA materiality analysis." SSR 13-2P, 2013 WL 621536 (Feb. 20, 2013). Here,

Plaintiff has failed to carry his burden of proving disability, by failing to

demonstrate how his substance abuse is not a material contributing factor or how

he would still be disabled if his substance abuse ceased.

Plaintiff responds by referring to several of his psychological records,

spanning the period from March 2010 – March 2012 and contends, "there is simply

no evidence that but for the marijuana references in Plaintiff's record (which are

slight), he was capable of gainful employment. The marijuana use was at most

periodically referenced in the record." (DE 18 at 8-11.) It is uncontested that

Plaintiff had severe mental restrictions while using substances during this period.

(DE 23 at 11.) However, the Commissioner points out multiple examples of

inconsistencies in these records, such as the April 2, 2010 admission of marijuana

use (R. at 286) and the same-day denial of substance abuse (R. at 308), as well as

the April 12, 2011 notation that Plaintiff smokes week regularly (R. at 441) and the

notation, apparently *from the very next day*, that Plaintiff had not used marijuana in 5 months (R. at 433).  (DE 23 at 12.)  I might also point out, as noted above, that Plaintiff's rote answer of "5 months; 1 year" whenever he is asked about his most recent use of cannabis or alcohol strains credibility.

Plaintiff also challenged the ALJ's Step 4 finding that, "during periods of non-sobriety, his symptoms significantly interfere with his ability to perform any sustained work[,]" (R. at 45), contending the record "does not show periods of 'non-sobriety';" rather, the "holistic record" reflects a "long period of sobriety." (DE 18 at 11.)  However, as described above:  Plaintiff's March 31, 2010 psychosocial assessment indicates periodic use of marijuana and alcohol from an early age (R. at 299); Dr. Sabbagh's April 12, 2011 notes indicate Plaintiff "smokes weed regularly[,]" (R. at 441); and Plaintiff's April 19, 2012 testimony indicates he used marijuana about three weeks earlier (R. at 95).  Thus, the record does not indicate a "long period of sobriety."[7]

---

[7] Any confusion as to whether Plaintiff was sober during March 2012 would likewise not require remand.  Plaintiff points to his March 23, 2012 lab tests, which revealed his urine was clear.  (DE 18 at 11, R. at 588-589.)  To be sure, Dr. Khan's March 27, 2012 psychiatric evaluation notes Plaintiff's wife's representation that Plaintiff tested positive for cannabis in the emergency room.  (R. at 565.) However, her claim is not substantiated by the March 23, 2012 urine test.  (R. at 588-589.)  Moreover, the same day *mental status* nursing assessment noted "normal ambulatory status," and "alert, oriented and fully verbal," and the *neurologic* nursing assessment indicates Plaintiff was "alert and oriented," had clear speech, responded to commands and moved all extremities.  (R. at 584.) Thus, even though the March 23, 2012 clinician history indicated "anxiety,

18

Plaintiff further argues that the record reflects consistency of symptoms translating to "marked" limitations in the Listing's "B" criteria, suggesting Plaintiff would be "off task" and absent from work.  (DE 18 at 11.)  Here, citing several records ranging from March 31, 2010 to August 15, 2011, Plaintiff specifically states there is no evidence that his symptoms of hallucinations, poor eye contact, flat affect/insight and poor sleep occurred in greater severity when using drugs or alcohol.  (DE 18 at 11-12.)  However:

- Dr. Balunas's May 14, 2011 assessment appears to conclude that, as a result of regular use of addictive substances, Plaintiff had:  depressive syndrome characterized by sleep disturbance; or decreased energy; or difficulty concentrating or thinking; or hallucinations, delusions or paranoid thinking (R. at 132, 144)

- A February 22, 2012 SUD Biopsychosocial Assessment strongly indicated dependence, in part because Plaintiff answered "yes" to the question "Have you even neglected some of your usual responsibilities because of using alcohol or drugs?" and "yes" to the compound question "Have you ever found yourself preoccupied with wanting to use alcohol or drugs?" or "Have you found yourself thinking a lot about drinking or using?" (R. at 547)

- On October 17, 2011, during a follow up appointment regarding boils or rash on Plaintiff's legs, Dr. Roome noted that Plaintiff had a desire or motivation to learn and denied insomnia, hypersomnia and impaired concentration (R. at 530-531), and this was a point at which Plaintiff testified he would have been sober (R. at 95)

(DE 23 at 14-15.)  Thus, the record indicates Plaintiff's symptoms were exacerbated by substance use, and materially improved by sobriety.

---

increased stress lately[,]" (R. at 584), as the Commissioner observes, the March 23, 2012 McClaren ER records illustrate that Plaintiff was less impaired when he was sober.  (DE 23 at 13.)

**b.   Substantial evidence supports the ALJ's assignment of weight to the opinion evidence.**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR § 404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

20

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[8] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the

---

[8] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance." S.S.R. 96-5p, 61 FR 34471-0, at *34473. Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Within the ALJ's Step 2 discussion, he made various assignments of weight. (R. at 37-42.)  As issue here is the ALJ's assignment of weight to the opinion(s) of Dr. Ballard, seemingly Plaintiff's treating physician.  (DE 18 at 12.)  The ALJ expressly cited Dr. Ballard's December 23, 2010 medication review / updated plan (R. at 382-385), his March 3, 2011 psychiatric / psychological examination report

and mental RFC assessment (R. at 362-364, 365-366);[9] and his March 1, 2012

opinion (R. at 440), to which the ALJ specifically assigned little weight.  (R. at 38-

39, 41.)

Plaintiff argues that the ALJ did not address the 20 C.F.R. § 404.1527(d)(2)

factors in his consideration of Dr. Ballard's March 3, 2011 opinions.  (DE 18 at 12-

13, R. at 38-39.)  Noting that Plaintiff's GAF score never exceeded 50, Plaintiff

points out:  "'[a] GAF of 41 to 50 means that the patient has serious symptoms ...

OR any serious impairment in social, occupational, or school functioning (e.g., no

friends, unable to keep a job).'"  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276

(6th Cir. 2009) (quoting *Edwards v. Barnhart,* 383 F.Supp.2d 920, 924 n. 1

(E.D.Mich.2005)).  In fact, the ALJ referenced Dr. Khan's April 2011 psychiatric

evaluation - which acknowledged Plaintiff was *out of medication* and set Plaintiff's

GAF at 40 - and then noted, "although claimant had a low GAF score, he had been

off his medication[.]"  (R. at 39, 429, 434.)  In addition, even if the ALJ did not

expressly note Dr. Khan's March 27, 2012 assessment of Plaintiff's GAF as 35 (R.

at 567), the ALJ noted two other instances in which Plaintiff's GAF was assessed

at 40 – Dr. Ballard's March 3, 2011 and December 23, 2010 notes.  (R. at 38, 362-

364, 382-385).

---

[9] In addition, the Court notes that Dr. Ballard conducted a medication review /
updated plan on March 3, 2011.  (R. at 374-377.)

However, even if Dr. Ballard's March 3, 2011 psychiatric/psychological examination report determined that Plaintiff's GAF was 40, and even if Dr. Ballard's March 3, 2011 mental RFC assessment listed several areas in which Plaintiff was moderately or markedly limited, the same mental RFC assessment also stated Plaintiff was not significantly limited in his ability to carry out "simple, one o[r] two-step instructions."  (R. at 363, 365-366.)  Here, the RFC included work "limited to *simple*, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only *simple* work-related decisions and routine work place changes."  (R. at 44, 47 (emphases added).)  Thus, even if the ALJ did not assign Dr. Ballard's March 3, 2011 opinions specific weight, the RFC's limitations to simple tasks and simple decisions are consistent with Dr. Ballard's March 3, 2011 opinion that Plaintiff is not significantly limited in his ability to carry out simple, one or two-step instructions (R. at 365).[10]  In essence, the ALJ *agreed with* Dr. Ballard's assessment and established an RFC consistent with it.  *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 840 (6th Cir. 2005) ("Because the ALJ agreed with Bailey's conclusions, his failure to give reasons for the amount of weight placed on Bailey's opinion is, at most, harmless error.").

---

[10] Here, the Court assumes the State of Michigan's DHS Mental RFC Assessment form contains a typographical error when it refers to "one **of** two-step instructions."  (R. at 365 (emphasis added).)

In addition, Plaintiff argues that the ALJ did not address the 20 C.F.R. § 404.1527(c)(2)-(6) factors in his assignment of little weight to Dr. Ballard's March 1, 2012 opinion that Plaintiff is totally disabled (R. at 440). (*See* DE 18 at 13-14, R. at 41.). Here, Plaintiff argues that Dr. Ballard's March 1, 2012 prescription slip (R. at 440) is consistent with his March 3, 2011 mental RFC assessment, which opined that Plaintiff had several marked limitations (R. at 365-366), as well as Dr. Ballard's treatment notes from Catholic Charities, presumably his July 1, 2010 psychiatric evaluation / plan (R. at 368-373) and his March 3, 2011 medication review / updated plan (R. at 374-377).   However, "the ultimate determination of disability is a matter reserved to the Commissioner." *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008); *see also* SSR 96-5p, 1996 WL 374183 (S.S.A. July 2, 1996). Moreover, the ALJ had previously acknowledged that Dr. Ballard's March 3, 2011 psychiatric / psychological examination report reflects that he first evaluated Plaintiff in July 1, 2010 (R. at 38, 364). Thus, it is likely the ALJ took into consideration the length of Plaintiff's treatment relationship with Dr. Ballard, a fact which he acknowledges in his recitation of the history. Furthermore, after expressly assigning little weight to Dr. Ballard's March 1, 2012 note, the ALJ listed many of the factors used in weighing medical opinions, ultimately explaining that Dr. Ballard's opinion "is quite conclusory and the doctor

provided no explanation of the evidence relied on in forming that opinion[.]"  (R. at 41, 440; 20 C.F.R. §§ 404.1527(c), 416.927(c).)

### c. Substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).

### i. Non-compliance with treatment protocols

At Step 4, the ALJ found that Plaintiff was credible with respect to having little or no energy, feelings of helplessness about the future; having a hard time paying attention; and difficulty concentrating.  (R. at 44.)  However, at Step 5, within his findings about the effect of Plaintiff stopping the substance abuse, the ALJ limited Plaintiff's credibility.  (R. at 46-50.)  For example, stating that Plaintiff has been prescribed CPAP (Continuous Positive Airway Pressure) – an apparent reference to Dr. Sabbagh's April 12, 2011 letter that Plaintiff was advised to comply with his CPAP, citing the March 23, 2012 McLaren Emergency Department visit – where Plaintiff left against medical advice (AMA), and referencing the March 27, 2012 psychiatric evaluation – which indicates that

26

Plaintiff does not use a CPAP machine – the ALJ stated that Plaintiff's credibility

"is limited because of his unwillingness to follow treatment protocols."[11] (R. at 40,

48, 441-443, 584-589, 562-568.)

### ii.   Substance abuse

The Court should conclude that the ALJ's credibility determination is

supported by substantial evidence.  To be sure, Plaintiff points to state agency

reviewer Leonard C. Balunas, Ph.D.'s May 14, 2011 determination that there was

no medical evidence of drug addiction or alcoholism (DAA).  (DE 18 at 14, 138.)

However, Dr. Balunas seems to have also concluded that, as a result of regular use

of addictive substances, Plaintiff had:  depressive syndrome characterized by sleep

disturbance; or decreased energy; or difficulty concentrating or thinking; or

hallucinations, delusions or paranoid thinking.  (R. at 132, 144.)

As to the ALJ's Step 5 assertion that Plaintiff's substance abuse "is not so

deep-seated as to be irremediable . . . [,]" Plaintiff points out that he has been

diagnosed and treated for bipolar disorder and contends that the ALJ did not

consider that "bipolar disorder can precipitate substance abuse, for example as a

means by which the sufferer tries to alleviate h[is] symptoms[,]"when considering

---

[11] To the extent Plaintiff is challenging the propriety of the ALJ's reliance on
Plaintiff's unwillingness to follow treatment protocols (R. at 48), the ALJ is
permitted to consider such information.  _Sias v. Sec'y of Health & Human Servs._,
861 F.2d 475, 480 (6th Cir. 1988).

materiality.  *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (citation

omitted); (DE 18 at 14-15, R. at 48.)  However, Plaintiff does not substantiate this

argument with citation to the record.  (DE 23 at 22; *see Poremba v. Colvin*, No. 11

CV 50091, 2014 WL 28818, at *16 (N.D. Ill. Jan. 2, 2014) ("the Claimant

presented no testimony at either hearing that he was abusing alcohol to alleviate

the symptoms of his mental health condition, nor does the record contain any

notation in any progress note establishing that phenomenon.").)

### iii.    Daily activities

Plaintiff testified about taking naps.  (R. at 90.)  Citing various chart notes,

Plaintiff contends "he was lethargic, had poor sleep and limited daily functioning."

(DE 18 at 15.)  Yet, on April 6, 2010, therapist Gliniecki apparently believed it

appropriate to suggest walking the apartment complex several times a day for

about 15 minutes each time.  (R. at 313.)  On December 23, 2010, therapist

McNeal noted that Plaintiff was able to manage household responsibilities.  (R. at

389.)  On or about April 12, 2011, Dr. Sabbagh advised Plaintiff to "comply with

his CPAP and have regular meal and sleep schedules."  (R. at 442.)  Later, on or

about March 15, 2012, Dr. Rao noted both that Plaintiff "should be able to work if

he finds a job[,]" even while further noting that Plaintiff's pain was significant and

severe.  (R. at 554.)  Citing records from Catholic Charities, the ALJ found that

Plaintiff "would have mild restriction in activities of daily living if the substance

use was stopped." (R. at 46, 357-399 [Ex. 3F].)  The ALJ also noted, "Even while abusing, he has been able to engage in normal daily activities."  (R. at 48.)  This conclusion is supported by substantial evidence.

### iv.    Lack of treatment/hospitalization

Plaintiff does challenge the ALJ's observations that Plaintiff had not been psychiatrically hospitalized, noting that "[a] claimant does not need to be hospitalized in order to show that she suffers from a disabling mental impairment." *Hampton v. Colvin*, 2013 U.S. Dist. LEXIS 174614, *28 (N.D. Ill. Dec. 13, 2013); (R. at 46, 48; DE 18 at 15, DE 24 at 5).[12]  However, as the Commissioner suggests, the ALJ may consider hospitalizations, or a lack thereof, in forming his or her disability determination.  (DE 23 at 23; *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 445 (6th Cir. 2011) (finding the ALJ's credibility finding supported by sufficiently substantial evidence where, in part, "the ALJ justified its partial adverse credibility finding on several factors, including the accurate conclusion that Monateri's impairments have—excluding occasions also involving substance abuse detox—'not otherwise required acute inpatient or outpatient emergency care and treatment.'"); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 335 (6th Cir.

---

[12] *See also Voigt v. Colvin*, 2014 U.S. App. LEXIS 4942, **8 (7th Cir. 2015) ("The administrative law judge went far outside the record when he said that if Voigt were as psychologically afflicted as Day thought, he 'would need to be institutionalized and/or have frequent inpatient treatment'—a medical conjecture that the administrative law judge was not competent to make . . . and that was implausible to boot.").

2007) (finding ALJ had good reasons to reject treating physician's findings where, in part, "Dr. Kleykamp's modest treatment regimen for Myatt is inconsistent with a diagnosis of total disability.""); *Mansoob v. Sec'y of Health & Human Servs.*, No. 91-1819, 1992 WL 97961, *4 (6th Cir. May 8, 1992) (substantial evidence that mental impairments were not disabling where Plaintiff had been hospitalized only three times for mental treatment and had received a generally favorable prognosis following the last hospitalization).

Plaintiff replies that he was treated at a "Mobile Crisis Stabilization program from March 25, 2012 through April 4, 2012[,]" and "received crisis interventions from Mobile Crisis from March 31, 2010 through April 9, 2010."  (DE 24 at 5, R. at 561.)  Although the April 4, 2012 letter from Hope Network substantiating this treatment makes use of the words "admitted" and "admission," this appears to have been outpatient treatment, as Plaintiff's reply describes the Mobile Crisis Stabilization program as "[i]ntended to provide a short-term alternative to inpatient hospitalization for those experiencing acute psychiatric crisis."  (DE 24 at 5 n.4.)  However, even if the Mobile Crisis Stabilization program was inpatient, the ALJ's July 18, 2012 Step 2 discussion still recognizes psychological treatment during March / April 2012.  For example, the ALJ specifically referred to Plaintiff's April 19, 2012 testimony that he was taking treatment with Catholic Charities / New Passages / Hope Network.  (R. at 37, 100.)  Also, while it does not appear that the

30

ALJ specifically referenced Plaintiff's March / April 2010 or March 2012 / April 2012 treatment from the Mobile Crisis Stabilization program, the ALJ's Step 2 discussion did cite the March 27, 2012 psychiatric evaluation (R. at 562-568) - which is among Plaintiff's counsel's submission of records from Hope Network / New Passages / Genesee County CMH (Ex. 15F (560-581)).  (R. at 41-42.)  Thus, the ALJ's decision clearly recognized that Plaintiff underwent psychological assessment during March 2012, as well as Plaintiff's April 19, 2012 testimony that he was currently receiving psychological treatment.  The ALJ did not need to directly address each piece of evidence in his decision.  *Bailey v. Commissioner of Social Sec.*, 413 F.App'x 853, 855 (6th Cir. 2011) ("But [an ALJ] is not required to analyze the relevance of each piece of evidence individually.  Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'") (quoting 20 C.F.R. § 404.953); *see also*, *Kornecky v. Commissioner of Social Security*, 167 F.App'x 496, 508 (6th Cir. 2006).

### v.   Conclusion

In sum, the ALJ explained that Plaintiff's credibility was limited because of his unwillingness to follow treatment protocols (R. at 48), for which the ALJ gave express citations to the record (R. at 584-589, 562-568), and, as illustrated above, substantial evidence supports this assessment.  Moreover, the ALJ's observations regarding Plaintiff's daily activities and level of treatment lend further support to

31

his credibility findings. Therefore, remand on the basis of credibility is not warranted.

### G.    Conclusion

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 14, 2016          s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on January 14, 2016, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti

33